## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

VICTOR STEPHEN LINAM,

      Plaintiff,

v.                                                                                    Civ. No. 20-63 GJF

KILOLO KIJAKAZI, *Commissioner of*
*the Social Security Administration*,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 21] ("Motion"). The Motion is fully briefed. ECF 25 (Response); ECF 29 (Reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** the Motion, and **DISMISS** this case **WITH PREJUDICE**.

### I.  BACKGROUND

Victor Stephen Linam ("Plaintiff") was born in 1969. Administrative Record ("AR") at 125. In August 2016, Plaintiff applied for disability insurance benefits and for supplemental security income, alleging that he became disabled in January 2010. *Id.* at 15, 317. Plaintiff alleged that he was disabled due the following relevant conditions: severe depression, "[s]chizo affective" disorder, and bipolar disorder with "[p]sychotic [b]ehavior." *Id.* at 18, 49–63. After both applications were denied initially and on reconsideration, *id.* at 124–88, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 15, 39, 207. In anticipation of the hearing, Plaintiff amended his alleged disability onset date to January 28, 2015. *Id.* at 43, 401.[1]

---

[1] Plaintiff did so because he suffered from a heart attack, requiring the "placement of a coronary stent" on that date. AR at 401.

Following the hearing, ALJ Michael Leppala issued a written decision finding Plaintiff not disabled. *Id.* at 30. Plaintiff appealed the decision to the Appeals Council. *Id.* at 291–92. Finding "no reason under [its] rules to review the [ALJ's] decision," the Appeals Council denied Plaintiff's request for review. *Id.* at. 1. On January 22, 2020, Plaintiff timely filed the instant action in this Court. ECF 1.

## II.  PLAINTIFF'S ARGUMENTS

Plaintiff argues that remand is required because the ALJ erred in weighing the opinions of Drs. Barbara Koltuska-Haskin and Louis Wynne, examining physicians who opined on the impact that Plaintiff's mental limitations may have on his ability to work. ECF 21 at 12–19. Specifically, Plaintiff contends that the ALJ erred in weighing Dr. Koltuska-Haskin's opinion by: (1) giving it an ambiguous weight; (2) finding that her opinion was internally inconsistent; (3) substituting his judgment for that of Dr. Koltuska-Haskin; and (4) finding that Dr. Koltuska-Haskin's opinion was inconsistent with the record. ECF 21 at 11–16. In addition, Plaintiff asserts that the ALJ erred in weighing Dr. Wynne's opinion by: (1) failing to articulate how Dr. Wynne's opinion was internally inconsistent; (2) substituting his judgment for that of Dr. Wynne; and (3) finding Dr. Wynne's opinion inconsistent with the record. *Id.* at 16–19.

## III. APPLICABLE LAW[2]

### A.  Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether

---

[2] Because Plaintiff filed his claims in August 2016, AR at 15, the Court evaluates the ALJ's decisions under the regulations applicable to claims filed before March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (regulating the SSA's evaluation of "opinion evidence for claims filed before March 27, 2017").

the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

3

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920).   The claimant bears

the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### C.  Weighing Medical Opinion Evidence

The SSA evaluates medical opinion evidence in light of all the other evidence in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b). When weighing the opinions of non-treating medical sources, the SSA considers the following factors: (1) whether the source examined the claimant; (2) whether the source treated the claimant; (3) whether the source's opinion is supported by evidence in the record; (4) whether the opinion is consistent with "the record as a whole;" (5) whether the medical source was a specialist who gave an opinion on a medical issue within his or her specialty; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Opinions that "would direct the determination or decision of disability," however, are not "medical opinions." 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3).

An ALJ must consider every medical opinion in the record. *Keyes-Zachary v. Astrue*, 695

F.3d 1156 (10th Cir. 2012) (citing 20.C.F.R. §§ 404.1527(c), 416.927(c)). In doing so, the ALJ must explain the weight he assigns to each opinion. *Id.* This duty requires the ALJ to articulate his weighing decision specifically enough so that the Court can meaningfully review the ALJ's decision. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).   In *discussing* the weight he chose to give medical opinion, if "[t]he ALJ provided *good reasons*"—e.g., by making clear both "the weight" given and "the reasons for that weight"—then "[n]othing more was required." *Oldham*, 509 F.3d at 1258 (emphasis added) (quoting *Watkins*, 350 F.3d at 1300) (citing 20 C.F.R. § 404.1527(c)(2)).

An ALJ need not adopt any one opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1288–89 (10th Cir. 2012). Indeed, it is the "ALJ, not a physician," who is charged "with determining a claimant's RFC." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 1996 WL 374183, at *5). Accordingly, the Tenth Circuit has rejected the notion that "there must be specific, affirmative, medical evidence in the record as to each requirement of an exertional work level before an ALJ can determine [residual functional capacity] within" any one category. *Howard*, 379 F.3d at 949. An ALJ, however, is not permitted to substitute his own medical judgment for that of a medical professional. *C.f. Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) ("[T]he ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis.") (citing *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987)).

6

## IV.  The ALJ's Decision and Findings[3]

The ALJ found that "[b]ased on the application for a period of disability and disability insurance benefits filed on August 18, 2016," Plaintiff was "not disabled." AR at 30. Likewise, the ALJ determined that "[b]ased on the application for supplemental security income filed on August 19, 2016," Plaintiff was "not disabled." *Id.* The ALJ rejected both claims at step five, finding that, although Plaintiff was incapable of performing any past relevant work, he could perform jobs that exist in a significant number in the national economy. *Id.* at 28–29.

### A.  Steps One Through Three[4]

At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity since . . . the amended alleged onset date." AR at 18. At step two, the ALJ concluded that Plaintiff had the following severe impairments: chronic liver disease and cirrhosis, obesity, and anxiety disorder. *Id.*[5] At step three, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that m[et] or medically equal[ed] the severity" of a "listed impairment." *Id.* at 19.[6]

---

[3] Because Plaintiff challenges the ALJ's decision only with respect to medical opinions about Plaintiff's alleged mental limitations, the Court does not summarize the record regarding Plaintiff's alleged physical limitations. *See* ECF 21 at 11–19.

[4] The ALJ also found that Plaintiff met the insured status requirements of the "Social Security Act through March 21, 2015," AR at 17, which was required for Plaintiff to have a viable claim for disability insurance benefits. *See* 42 U.S.C. § 423(c)(1).

[5] The ALJ used the term "anxiety disorder" to encapsulate all of Plaintiff's alleged mental conditions, including his schizoaffective disorder, bipolar disorder, and severe depression. AR at 18 n. 2.

[6] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that one of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id.*

## B. Step Four[7]

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):[8]

"Plaintiff [can] perform light work . . . except [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] can stand and/or walk for about six hours and sit for about six hours in an eight-hour workday, all with normal breaks. [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work related decisions. [Plaintiff] can respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, and maintain concentration, persistence, and pace for up to an including two hours at a time with normal breaks throughout a normal workday. [Plaintiff] is limited to occasional interaction with coworkers, supervisors, and the general public."

AR at 22.

The ALJ began his analysis by discussing the treatment notes in the record. *Id.* at 24. The ALJ observed that Plaintiff was frequently reported as having an unremarkable mood and affect. *Id.* (citing *id.* at 419, 655, 941, 1032). Likewise, the ALJ found that Plaintiff was often noted as having normal concentration. *Id.* (citing *id.* at 419, 647). The ALJ acknowledged that Plaintiff complained of hallucinations and was sometimes observed to have an abnormal mood and/or affect, *id.* (citing *id.* at 581–82), which later improved with medication. *Id.* (citing *id.* at 1121). The ALJ emphasized that the bulk of Plaintiff's non-medication treatment was fairly conservative, involving recommendations that he engage in "journaling, writing mock letters, and grounding techniques." *Id.* (citing *id.* at 1021–22).

The ALJ also addressed the third-party function reports submitted by Plaintiff's brother and

---

[7] The Tenth Circuit has described step four of the sequential evaluation process as consisting of three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity ("RFC"). *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, he could meet the physical and/or mental demands of his past relevant work. *Id.*

[8] The RFC describes the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1).

roommate. *Id.* at 25. The roommate claimed that Plaintiff was uninterested in social activities, became overwhelmed easily, sometimes had to lie down and meditate, and Plaintiff would scream and yell at night. *Id.* (citing *id.* at 344, 394). Plaintiff's brother wrote that Plaintiff often isolated himself and had difficulty in public. *Id.* (citing *id.* at 397). The ALJ gave these reports "some weight" because they were based on the authors' relationship with Plaintiff but were otherwise inconsistent with the record. *Id.* Particularly, the ALJ reasoned that although Plaintiff's brother and roommate reported severe symptoms, Plaintiff received only sporadic treatment. *Id.* (citing *id.* at 581–82, 1021–22, 1140).

The ALJ also considered the medical opinions in the record beginning with those of Drs. Cathy Simutis and Jill Blacharsh, the state agency psychological examiners assigned to assess Plaintiff's ability to work. *Id.* at 25. Dr. Simutis opined that Plaintiff could perform semi-skilled work. *Id.* (citing *id.* at 137, 151). On reconsideration, Dr. Blacharsh concurred with Dr. Simutis's assessment. *Id.* (citing *id.* at 164–67, 180–83). The ALJ gave the state agency examiners' opinions "great weight," finding them consistent with the record. *Id.* The ALJ reasoned that the opinions were consistent with records finding that Plaintiff had unremarkable mood, affect, attention, concentration, and memory. *Id.* (citing *id.* at 419, 432, 595, 646, 851, 1004, 1032). The ALJ further found the opinions in line with Plaintiff's conservative treatment. *Id.* at 11 (citing *id.* at 581–82, 1019–22, 1032, 1121, 1142). Considering the rest of the record, however, the ALJ adopted "more restrictive limitations" than those recommended by Drs. Simutis and Blacharsh. *Id.*

Next, the ALJ evaluated Dr. John Owen's opinion. *Id.* at 26. Dr. Owen contracted with the State of New Mexico's Disability Determination Services to administer a Mini Mental Status

Examination[9] ("MMSE") to determine Plaintiff's "eligibility for disability." *Id.* at 991, 994. Based on his examination, Dr. Owen concluded that Plaintiff had certain limitations in the areas of understanding and remembering, sustaining concentration, social interaction, and "adaption." *Id.* at 993. Specifically, Dr. Owen found Plaintiff to be moderately impaired in understanding and remembering detailed or complex instructions as well as mildly-to-moderately impaired in persisting at tasks and interacting with the public, co-workers, and supervisors. *Id.* at 993. The ALJ gave "some weight" to Dr. Owen's assessment. *Id.* at 26. The ALJ accepted Dr. Owen's conclusion that Plaintiff had a moderate limitation in understanding detailed or complex instructions as well as three mild-to-moderate limitations in social interaction. *Id.* at 26. The ALJ, however, found the remainder of the limitations inconsistent with the record. *Id.*

The ALJ then considered Dr. Koltuska-Haskin's opinion. Dr. Koltuska-Haskin examined Plaintiff four times over the course of a month, for the purpose of "neuropsychological evaluation." *Id.* at 1007. In forming her opinion, Dr. Koltuska-Haskin administered a total of twenty-two psychological tests. *Id.* at 1009. Based on the results, Dr. Koltuska-Haskin concluded that Plaintiff had "cognitive problems primarily in the areas of executive functioning, attention/concentration, verbal memory, working memory and nonverbal processing speed." *Id.* at 1014. The doctor further found that Plaintiff had "a great deal of difficulty in the area of emotional functioning." *Id.* Based on these findings, Dr. Koltuska-Haskin recommended that Plaintiff's medications be adjusted, that he attend therapy "for a long time," that he participate in "community case management services"

---

[9] "The MMSE is a commonly used set of 30 questions which take about 10 minutes to administer and is used for screening cognitive function." *Pohl v. Saul*, 1:20-cv-00111-LF, 2021 WL 926586, at *3 n.5 (D.N.M. Mar. 11, 2021) (citing Dr. Hayley Willacy, *Mini Mental Status Examination*, PATIENT.INFO (Feb. 6, 2017), https://patient.info/doctor/mini-mental-state-examination-mmse#ref-1%20\).

to treat his alcoholism, and that he be enrolled in a brain study. *Id.* Dr. Koltuska-Haskin concluded that Plaintiff would have "difficulty keeping a full-time job and . . . should apply for disability." *Id.* The ALJ afforded Dr. Koltuska-Haskin's opinion only "some weight" because, although she examined him, her opinion was inconsistent with the results of her testing, her conservative treatment recommendations, and other evidence in the record. *Id.* at 26.

Last, the ALJ considered Dr. Louis Wynne's opinion, who performed a psychological evaluation of Plaintiff at the request of Plaintiff's counsel. *Id.* at 1175. Dr. Wynne noted that Plaintiff was pleasant and cooperative during the examination and answered Dr. Wynne's questions "promptly with an even tempo." *Id.* at 1172. Dr. Wynne wrote that Plaintiff engaged in the examination without "evasion, confusion, tangentiality, or circumstantiality." *Id.* Dr. Wynne observed that Plaintiff "could remember and carry out a written set of directions," "could remember both three things and three words after an interval of 2 minutes with two related intervening tasks, and his ability to perform operations in mental arithmetic was unimpaired." *Id.* at 1172–73. Dr. Wynne submitted his findings via a check-the-box form, which asked him to assess whether Plaintiff was impaired in the following categories: "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaption." *Id.* at 1177–78. Dr. Wynne opined that Plaintiff had one moderate limitation in understanding and memory, five moderate limitations and one marked limitation in "sustained concentration and persistence," two moderate limitations in "social interaction," and three moderate limitations and one marked limitation in "adaption." *Id.*[10] The ALJ gave "some weight" to Dr. Wynne's opinion. *Id.* at 27. The ALJ

---

[10] A "[m]oderate" limitation is "[a] limitation that seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis." AR at 1178 (emphasis in original). A "[m]arked" limitation is "[a] severe limitation which precludes the individual's ability [to] usefully . . . perform the designated activity on a

reasoned that, although Dr. Wynne examined Plaintiff, the limitations Dr. Wynne assessed were inconsistent with the narrative portion of his opinion, other objective medical evidence in the record, and with the conservative treatment Plaintiff was often prescribed for his alleged symptoms. *Id.* (citing *id.* at 410, 433, 581–82, 585, 594, 647, 655, 851, 994–96, 1004, 1013, 1019–22, 1032, 1121, 1142, 1172–73).

Based on the Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform any of his past relevant work and thus proceeded to step five of the sequential evaluation process. *Id.* at 29.[11]

## C. Step Five

The ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that" Plaintiff could perform. *Id.* at 29 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a). The vocational expert testified that a person with Plaintiff's RFC could perform the requirements of representative occupations such as small products assembler (95,000 jobs in the national economy) and housekeeping cleaner (414,000 jobs in the national economy). *Id.* Based on the record before him, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work" that existed in significant numbers in the national economy and therefore determined that a finding of "not disabled" was appropriate. *Id.* at 29–30 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

---

regular and sustained basis." *Id.*

[11] Plaintiff's past relevant work included serving as an armored car driver, a forklift driver, a store laborer, and an instrument salesperson. AR at 29.

## V. DISCUSSION

### A.  The ALJ Did Not Err in Weighing Dr. Koltuska-Haskin's Opinion

Plaintiff claims that the ALJ made three errors in weighing Dr. Koltuska-Haskin's opinion: (1) the ALJ gave "ambiguous weight" to Dr. Koltuska-Haskin's opinion; (2) the ALJ substituted his own judgment for Dr. Koltuska-Haskin's medical judgment; and (3) the ALJ erred in finding that the observations in the record documenting Plaintiff's normal mood, affect, attention, and concentration were inconsistent with Dr. Koltuska-Haskin's opinion. ECF 21 at 11–15.

Plaintiff argues that the ALJ's decision to give Dr. Koltuska-Haskin's opinion "some weight" was ambiguous. ECF 21 at 12. The ALJ was required to "articulate the weight, if any, he gave" to Dr. Koltuska-Haskin's opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). This requirement serves to ensure that an ALJ's decision is capable of review. *C.f. id.* (remanding an ALJ's decision for failing to articulate the weight he gave a treating physician's opinion because the court could not "meaningfully review the ALJ's determination"); *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.").

The ALJ's use of the term "some" to describe the weight he assigned Dr. Koltuska-Haskin's opinion was sufficiently clear, considering the explanation he provided for the weight he gave her opinion. The ALJ "credit[ed]" Dr. Koltuska-Haskin's opinion to the extent that it was derived from her in-person examinations and testing of Plaintiff. AR at 26. But the ALJ found the degree of limitation assessed by Dr. Koltuska-Haskin suspect because the rest of the record and her own

testing did not support her conclusion. *Id.* Accordingly, the Court does not find that the language "some weight" deprived it of the opportunity to meaningfully review the ALJ's weighing decision. *Langley*, 373 F.3d at 1123; *c.f. Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (holding that courts should avoid remanding ALJ decisions on the ground that the ALJ inadequately explained his or her decision if doing so "'would lead to unwarranted remands needlessly prolonging administrative proceedings'" (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005))).

Plaintiff next contends that the ALJ erred by finding Dr. Koltuska-Haskin's opinion inconsistent with the results of her testing and the conservative treatment she recommended because the finding "exceeded the scope of [the ALJ's] authority by making a medical conclusion based upon his own medical inferences from the record." ECF 21 at 13 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).

Plaintiff relies on *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). In that case, Winfrey claimed he was disabled in pertinent part due to "depression, general anxiety disorder, and somatoform disorder." *Id.* at 1119. An examining physician diagnosed Winfrey with somatoform disorder,[12] dysthymia, alcoholism, and personality disorder. *Id.* at 1021. The ALJ rejected that physician's somatoform diagnosis in part because the ALJ determined that the physician's use of the Minnesota Multiphasic Personality Inventory was not a proper basis on which to make such a diagnosis. *Id.* at 1022. Similarly, the ALJ "second-guessed" the physician's alcoholism diagnosis "by determining what rate of alcohol consumption should be considered excessive or abusive for"

---

[12] "Somatic symptom disorder is characterized by an extreme focus on physical symptoms—such as pain or fatigue—that causes major emotional distress and problems functioning." *Somatic Symptom Disorder*, Mayo Clinic (May 8, 2018), https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/symptoms-causes/syc-20377776.

Winfrey. *Id.* at 1023. Because the ALJ rejected the physician's opinions by "substituting his own medical judgment for that of" the physician, the Tenth Circuit remanded the case. *Id.* at 1023.

The lesson that *Winfrey* teaches is not that an ALJ is forbidden from rejecting or discounting a medical professional's opinion, but rather that the ALJ cannot second-guess the basis upon which a medical professional came to a *medical* conclusion. Here, however, the ALJ did not second-guess *any* of Dr. Koltuska-Haskin's *medical* conclusions or diagnoses. Instead, the ALJ discounted Dr. Koltuska-Haskin's conclusion about Plaintiff's *ability to work*. *See* AR at 26, 1014 ("Dr. Koltuska-Haskin opined that [Plaintiff] would have difficulty keeping a full time job."). Notably, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the SSA] will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In fact, such a statement is "not a medical opinion" but is instead an "opinion[] on [an] issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of [the] case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Even if Dr. Koltuska-Haskin's opinion were not an opinion on an issue reserved to the Commissioner, the ALJ was permitted to consider whether her opinion was supported by the evidence in the record and whether her opinion was otherwise consistent with "the record as a whole." *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The Court therefore holds that the ALJ did not substitute his judgment for that Dr. Koltuska-Haskin.[13]

Last, Plaintiff contends that the ALJ erred by finding that Dr. Koltuska-Haskin's opinion

---

[13] Plaintiff also insists that the ALJ erred by finding Dr. Koltuska-Haskin's opinion inconsistent with the conservative treatment she recommended. *See* ECF 21 at 14–15. Confusingly, however, Plaintiff looks for support in the treatment prescribed by *other* providers. *Id.* at 14–15 (discussing the findings and conclusions of Drs. Mugavin and Greenberg). Whether Dr. Koltuska-Haskin's opinion was consistent with the treatment of *other* providers is irrelevant to the ALJ's finding that Dr. Koltuska-Haskin's opinion was *internally* inconsistent. *Id.* at 26.

was inconsistent with evidence documenting Plaintiff as having normal mood, affect, attention, concentration, and memory. ECF 21 at 15 (citing AR at 26). Principally, Plaintiff complains that these observations were reported by providers treating Plaintiff for *physical* symptoms and not *mental* symptoms. *Id.* Although left unclear in his briefing, the logic of Plaintiff's argument appears to be that the ALJ was not permitted to cite notations from Plaintiff's physical treatment records to evaluate an opinion on Plaintiff's mental health. In support, Plaintiff relies on a single district court case, *Stonestreet v. Saul*, Civ. No. 19-230 KK, 2020 WL 1049349 (D.N.M. Mar. 4, 2020). ECF 21 at 15.

In that case, Stonestreet alleged that he was disabled due in relevant part to severe depression. *Stonestreet*, 2020 WL 1049349, at *1. Dr. Wynne examined Stonestreet and opined that he had a moderate limitation "in the ability to sustain an ordinary routine without special supervision and 'marked' limitations in the ability to (1) maintain attention [and] concentration for extended periods, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) work in coordination with or in proximity to others without being distracted by them, and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at *4.

The court held that the ALJ erred by finding that Dr. Wynne's opinions were inconsistent with reports from other treatment providers who noted that Stonestreet had normal alertness, attention, memory, intelligence, and behavior. *Id.* at *10. More specifically, the court found problematic that the ALJ rejected Dr. Wynne's opinions based *solely* on the observations of providers who treated Stonestreet for *physical* conditions while ignoring the notations supporting

16

Dr. Wynne's opinions created by providers who saw Stonestreet for *mental* symptoms. *Id.* at *10.

Plaintiff interprets *Stonestreet* to announce a new proposition that an ALJ may not consider treatment notes from providers who saw a claimant for physical symptoms in evaluating the opinion of an examining physician who opined on the claimant's mental health. The Court, however, understands *Stonestreet* merely to have applied the familiar rule that an ALJ is not permitted to pick and choose evidence, taking only the parts that are favorable to a finding of nondisability. *C.f. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). And here, the ALJ did not violate *Haga*'s dictate. Rather, the ALJ acknowledged records documenting Plaintiff's complaints of hallucinations and anxiety. AR at 24–25 (citing *id.* at 1019–21, 1121). In so doing, the ALJ did not err by citing treatment notes from providers who treated Plaintiff for physical symptoms in support of his conclusion that Dr. Koltuska-Haskin's opinion was inconsistent with the record.

In sum, the ALJ provided "good reasons" for the weight he gave to Dr. Koltuska-Haskin's opinion—including by making clear both "the weight" given and acceptable "reasons for that weight"—thus "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

**B. The ALJ Did Not Err in Weighing Dr. Wynne's Opinion**

Plaintiff argues that the ALJ erred by: (1) failing to adequately articulate how Dr. Wynne's opinion was internally inconsistent; (2) substituting his own medical judgment for that of Dr. Wynne; (3) citing the results of two MMSEs administered by medical sources from whom the ALJ did not adopt opinions; and (4) erroneously stating that Dr. Wynne's opinion was inconsistent with the conservative treatment documented in the record. ECF 21 at 16–19.

Plaintiff first contends that the ALJ erred by not offering "any explanation of" the

"perceived inconsistencies in Dr. Wynne's opinion." ECF 21 at 17 (citing *Langley v. Barnhart*, 373 F.3d 1116, 22–24 (10th Cir. 2004)). When an ALJ rejects a medical opinion because it is inconsistent with the record, the ALJ must articulate what those inconsistencies are. *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings." (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

The Court concludes that the ALJ adequately explained the inconsistencies between Dr. Wynne's check-the-box opinion and his narrative assessment. Dr. Wynne opined that Plaintiff had a marked limitation in maintaining attention and concentration for extended periods of time. AR at 27 (citing *id.* at 1177). The ALJ observed, however, that Plaintiff was able to "recall three things and three words after an interval of two minutes with two intervening, unrelated tasks." *Id.* (citing *id.* at 1172–73). Similarly, Dr. Wynne opined that Plaintiff was moderately limited in getting "along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* at 1178. But, as the ALJ noted, Dr. Wynne reported that Plaintiff was pleasant, cooperative, and maintained appropriate eye contact. *Id.* at 27 (citing *id.* at 1172). In fact, Plaintiff cites no observations from Dr. Wynne's narrative assessment that supported Dr. Wynne's conclusion that Plaintiff had "[a] severe limitation" in maintaining attention or concentration nor that Plaintiff had a limitation that "seriously interfere[d]" with his ability to interact with coworkers. *See* ECF 21 at 16–17; *c.f. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Trujillo v. Commissioner, SSA*, 818 F. App'x 835, 842 (10th Cir. 2020) (unpublished) (holding that a claimant

appealing an SSA ALJ's decision has the burden of showing harmful error).[14]

In a similar vein, Plaintiff insists that the ALJ erred by substituting his judgment for that Dr. Wynne by finding that some of Dr. Wynne's observations did not align with his conclusions. *See* ECF 21 at 17 (citing *Winfrey*, 92 F.3d at 1023). Plaintiff, however, again blurs the distinction between finding that a medical opinion is not supported (i.e., internally consistent) and second guessing *how* a medical provider comes to a diagnosis. The regulations require an ALJ to consider whether "a medical source presents relevant evidence to support a medical opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). This is different from second-guessing a medical provider's diagnosis. *See Winfrey*, 92 F.3d at 1022 ("[T]he ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis to make a diagnosis."). Here, the ALJ did not second-guess any of Dr. Wynne's diagnoses. *See* AR at 27. Instead, the ALJ merely found that Dr. Wynne's conclusions about Plaintiff's ability to do certain work-related tasks were not supported by his treatment notes, which is exactly the type of analysis the regulations dictate he do. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Plaintiff next argues that the ALJ erred by citing the results of two MMSE tests in the record[15] as evidence contradictory to Dr. Wynne's opinion. ECF 21 at 18. The crux of Plaintiff's

---

[14] Although Dr. Wynne wrote in his narrative assessment that "[Plaintiff's] ability to maintain attention and concentration for extended periods of time is . . . impaired," Dr. Wynne described no observation in his narrative assessment that supported this conclusion. *See* AR at 1172–75. Instead, Dr. Wynne reported that Plaintiff "could remember and carry out a written set of directions . . . He could count backwards from 100 by threes but not by sevens, and he could remember a series of digits forwards only to five but backwards also to five. He could also spell a common five-letter word backwards." *Id.* at 1172.

[15] Plaintiff scored 27/30 on the MMSE administered by Dr. Koltuska-Haskin and a 29/30 on the MMSE administered by Dr. Owen. *Id.* at 995, 1010. Scores between 25 and 30 are considered "normal;" scores between 21 and 24 are considered "mild;" scores between 10 and 20 are considered "moderate:" and scores of less than 10 are considered "severe." Dr. Hayley Willacy, *Mini Mental Status Examination*, PATIENT.INFO (Feb. 6, 2017),

argument is that the ALJ was not entitled to rely on those results because the ALJ did not adopt the opinions of the providers who administered them, Drs. Owen and Koltuska-Haskin. *Id*. But Plaintiff provides no legal support for this position and the Court is unaware of any such authority. The authority that *does exist* required the ALJ to consider objective medical evidence when evaluating a medical opinion, irrespective of source. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled."). The regulations impose no requirement that objective medical evidence must be produced only by a source whose opinion the ALJ adopts and the Court declines to impose such a requirement.

Last, Plaintiff contends that the ALJ erred by finding that Dr. Wynne's opinion was "inconsistent with the generally conservative treatment of [Plaintiff's] psychiatric symptoms." ECF 21 at 19 (citing AR at 27). Plaintiff cites Dr. Mugavin's treatment notes as evidence that he was not treated conservatively. ECF 21 at 14 (citing AR at 581–82). But Plaintiff fails to identify any treatment recommendations that would not be considered conservative. Dr. Mugavin largely recommended lifestyle changes like maintaining good nutrition, regular exercise, and employing stress-management tools such as journaling. AR at 581–82. Plaintiff also suggests that because he was prescribed Olanzapine,[16] he was not treated conservatively. ECF 21 at 14–15 (citing AR at

---

https://patient.info/doctor/mini-mental-state-examination-mmse#ref-1%20\.

[16] "Olanzapine is used to treat schizophrenia. It may also be used alone or with other medicines . . . to treat mania or mixed episodes that is part of bipolar disorder . . . Olanzapine may also be used together with fluoxetine to treat depression that is a part of bipolar disorder, and depression in patients who received other antidepressants that did not work well." *Olanzapine (Oral Route)*, Mayo Clinic (Aug. 1, 2021), https://www.mayoclinic.org/drugs-supplements/olanzapine-oral-route/description/drg-20071350. Plaintiff was prescribed Olanzapine to alleviate his "agitation and anxiety." AR at 585.

582, 1121). But Plaintiff acknowledged at the administrative hearing that the medication he was taking was effective and did not cause him to suffer adverse side effects. AR at 52–53, 1121 (observing that Plaintiff's "[a]nxiety disorder" "improved on olanzapine"); 20 C.F.R. §§ 404.1529(c)(3)(iv), 419.929(c)(1)(3)(iv) (instructing ALJs to consider "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or h[as] taken to alleviate [his or her] pain or other symptoms" when evaluating the severity of a claimant's symptoms).[17]

In sum, the ALJ also provided "good reasons" for the weight he gave to Dr. Wynne's opinion, and "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, Plaintiff's Motion is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***

---

[17] In addition to the arguments addressed above, Plaintiff also repeats his argument that the ALJ was not permitted to cite Plaintiff's physical treatment record to weigh Dr. Wynne's opinion. ECF 21 at 18–19. The Court rejects this argument for the same reasons described *supra* at 15–17.